Stuart M. Price, Esq.
**PRICE LAW GROUP, APC**
6345 Balboa Blvd, Suite 247
Encino, CA 91316
T: (818) 907-2030
F: (818) 205-2730
E: stuart@pricelawgroup.com
*Attorneys for Plaintiff,*
*Maria Garcia*

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | |
|---|---|
| MARIA GARCIA,<br><br>       Plaintiff,<br><br>vs.<br><br><br>DISCOVER BANK,<br><br>       Defendant. | **Case No.** 3:19-cv-176<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>1. TCPA, 47 U.S.C. § 227 *et. seq.*<br>2. TDCA, Tex. Fin. Code Ann. § 392 *et. seq.*<br>3. Intrusion Upon Seclusion<br>4. Tex. Civ. Prac. & Rem. Code § 41.001*et seq.*<br><br>(Unlawful Debt Collection Practices) |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Maria Garcia ("Plaintiff"), by and through her counsel undersigned,

allege the following against Discover Bank, ("Defendant" or "Discover"):

**INTRODUCTION**

1. Count I of Plaintiff's Complaint is based upon the Telephone Consumer Protection

Act ("TCPA"), 47 U.S.C. § 227. The TCPA is a federal statute that broadly regulates

the use of automated telephone equipment. Among other things, the TCPA prohibits

certain unsolicited marketing calls, restricts the use of automatic dialers or prerecorded messages, and delegates rulemaking authority to the Federal Communications Commission ("FCC").

2. Count II of Plaintiff's Complaint is based upon the Texas Debt Collections Act ("TDCA"), Tex. Fin. Code Ann. § 392 *et seq.*, which prohibits debt collectors from engaging in abusive, deceptive, and unfair practices in connection with the collection of consumer debts.

3. Count III of Plaintiff's Complaint is based upon the Invasion of Privacy – Intrusion Upon Seclusion, as derived from § 652B of the Restatement (Second) of Torts. § 652B prohibits an intentional intrusion, "physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns… that would be highly offensive to the reasonable person."

4. Count IV Plaintiff's Complaint is based upon Tex. Civ. Prac. & Rem. Code § 41.001*et seq.*, which allows a Plaintiff to recover exemplary damages where the "claimant proves by clear and convincing evidence that the harm with respect to which the claimant seeks recovery of exemplary damages results from: (1) fraud; (2) malice; or (3) gross negligence."

## JURISDICTION AND VENUE

5. Jurisdiction of the court arises under 28 U.S.C. § 1331 and 47 U.S.C. § 227.

6.  Plaintiff also brings this complaint under federal diversity jurisdiction, 28 U.S.C. § 1332, as the parties are completely diverse in citizenship and the amount in controversy exceeds $75,000.

7.  Venue is proper pursuant to 28 U.S.C. 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claim occurred in this District.

8.  Defendant transacts business here; therefore, personal jurisdiction is established.

## PARTIES

9.  Plaintiff is a natural person residing in El Paso, Texas.

10. Plaintiff is a "consumer" as defined by Tex. Fin. Code Ann. § 392.001(1)).

11. Defendant is a "debt collector" as defined by Tex. Fin. Code Ann. § 392.001(6).

12. Defendant is a "creditor" as defined by Tex. Fin. Code Ann. § 392.001(3).

13. Defendant, Discover Bank, is a national financial institution and can be served at its principal place of business at 2500 Lake Cook Road, Riverwoods, IL 60015.

14. Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

## FACTUAL ALLEGATIONS

15. Defendant is attempting to collect an alleged debt from Plaintiff on her Discover account ending in 5540 ("Account").

16. In or around October 2018, Defendant began placing calls to Plaintiff's cell phone number ending in "4496."

17. The calls placed by Defendant mainly originated from (801) 619-2503, (480) 481-1845, (385) 529-0736, (385) 261-7132, and (614) 758-2344. Upon information and belief, these phone numbers are owned, operated or controlled by Defendant or its agent(s).

18. On or about October 3, 2018, at 1:32 p.m., Plaintiff received a call on her cell phone from (801) 619-2503.

19. Plaintiff answered the phone and heard a short pause before Defendant's representative began to speak, indicating the use of an automated telephone dialing system. Defendant's representative identified herself as "Brenda" and informed Plaintiff that Defendant was calling to collect a debt.

20. During this conversation, Plaintiff told Defendant that she was having trouble financially due to medical procedures that Plaintiff needed. She explained that this medical issue caused her to default with Defendant.

21. Defendant's representative asked Plaintiff personal medical questions, including the nature of the procedures Plaintiff needed. Plaintiff was not comfortable discussing medical specifics with Defendant's representative, and thereafter requested Defendant to direct further contact to her only in writing and not to call her again.

22. Despite Plaintiff's clear revocation of consent to be called, Defendant continued to call her on her cellular telephone, often four (4) or five (5) times per day.

23. On or about October 16, 2018 at 8:11 p.m., after receiving several calls that day, Plaintiff called back (801) 619-2503 and again unequivocally revoked consent to be called further.

24. Throughout the remainder of October 2018 and through March 2019, Defendant pursued an aggressive campaign of collection calls to Plaintiff's cellular telephone.

25. On or about March 20, 2019 at 9:57 a.m., Plaintiff answered a call to her cell phone from (801) 619-2503.

26. Plaintiff heard a short pause before Defendant's representative began to speak, indicating the use of an automated telephone dialing system. Defendant's representative informed Plaintiff that Defendant was calling to collect a debt.

27. During this conversation, Plaintiff informed the representative that she had already spoken to a representative in October 2018 and told that representative that she could not afford to make payments at the moment. Plaintiff for the third time instructed Defendant to send further communication to her only in writing. This was the last time Defendant called from (801) 619-2503.

28. However, despite Plaintiff's third revocation of consent, Defendant continued to call her on her cellular telephone, albeit from different phone numbers.

29. On or about March 27, 2019 at 5:50 p.m., a mere seven (7) days after revoking consent to be called for the third time, Plaintiff received a call on her cell phone from (480) 481-1845. Not recognizing the phone number, Plaintiff answered the phone and heard a short pause before the Defendant's representative began to speak, indicating the use of an automated telephone dialing system.

30. Defendant's representative asked Plaintiff to hold, and then transferred her to another representative who identified himself as "Bill" who informed Plaintiff that Defendant was calling to collect a debt.

31. Understandably irate that her requests to Defendant to stop calling her were being ignored, Plaintiff told Defendant that she had spoken to another representative only days before, and again informed Defendant that she was unable to make payments at that time.

32. Plaintiff further informed Defendant that when she was able to make payments, she would call Defendant. For the fourth time, Plaintiff instructed Defendant to direct further communication to her only by mail.

33. Despite Plaintiff's fourth revocation of consent to be called, Defendant continued to call her on her cellular telephone usually three (3) to five (5) times per day.

34. On or about April 16, 2019 at 9:34 a.m., Plaintiff received a call on her cell phone from (385) 261-7132. Plaintiff answered the phone and heard a short pause before the Defendant's representative began to speak, again indicating the use of an automated telephone dialing system.

35. As this was the second call she had received from Defendant that morning, Plaintiff did not mince words with Defendant's representative. She informed the representative that she had spoken to Defendant less than a month previously and that she was upset that she was still getting calls. Plaintiff continued to tell Defendant that she would call when she was able to pay, but at the moment she could not do so. Plaintiff then hung up.

36. Despite Plaintiff's <u>fifth</u> revocation of consent to be called, Defendant continued to call her on her cellular telephone.

37. In fact, between October 2018 and April 2019, Plaintiff received approximately FOUR-HUNDRED AND FORTY-FIVE (445) phone calls to her cellular phone after she told Defendant not to call her any further.

38. Plaintiff revoked any consent to be called by Defendant at least five (5) times.

39. Defendant typically called Plaintiff three (3) times per day, but there were many days where Defendant called Plaintiff four (4) to five (5) times a day.

40. Defendant's calls were excessive and done with the purpose of attempting to harass Plaintiff into making a payment on the Account. Furthermore, Defendant's tactic of switching phone numbers repeatedly was done in order to trick Plaintiff into answering the calls.

41. Defendant was aware that Plaintiff was dealing with financial and medical issues, because Plaintiff explained her financial situation, as well as the reason behind it, on multiple occasions.

42. Defendant had actual knowledge of Plaintiff's financial situation and Defendant continued its campaign of automated calls in complete conscious disregard of Plaintiff's rights.

43. Plaintiff is an Army veteran who served from January 1991 to August 2008.

44. Plaintiff currently works as a military contractor to issue military equipment to locations around the world. Plaintiff is required to use her cell phone for work. As a result, Plaintiff must provide her cell phone number to military personnel and cannot be without her cell phone while working.

45. Defendant's barrage of calls to Plaintiff's cellphone caused constant disruption and distraction to her workday, as well as embarrassment and humiliation because her phone would ring constantly while she was at her place of business.

46. Defendant's incessant calls also tied up Plaintiff's cell phone during working hours.

47. Each and every call to Plaintiff's cell phone during work hours caused her to have to put her work on hold, check the number, recognize the number as belonging to Defendant (if possible), send the call to voicemail, and return to her work.

48. Plaintiff has three (3) daughters who must be able to reach her. The calls to her cell phone after work hours were disruptive to her family.

COMPLAINT AND DEMAND FOR JURY TRIAL

49. As a result of Defendant's conduct, Plaintiff has sustained actual damages including but not limited to, embarrassment, anxiety, stress, headaches, frustration, depression, and emotional and mental pain and anguish.

## COUNT I

### (Violations of the TCPA, 47 U.S.C. § 227)

50. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

51. Defendant violated the TCPA.  Defendant's violations include, but are not limited to the following:

    a. Within four years prior to the filing of this action, on multiple occasions, Defendant violated TCPA 47 U.S.C. § 227 (b)(1)(A)(iii) which states in pertinent part, "It shall be unlawful for any person within the United States . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice — to any telephone number assigned to a . . . cellular telephone service . . . or any service for which the called party is charged for the call.

52. As a result of Defendant's violations of 47 U.S.C. § 227, Plaintiff is entitled to an award of five hundred dollars ($500.00) in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B). If the Court finds that Defendant knowingly and/or willfully violated the TCPA, Plaintiff is entitled to an award of up

COMPLAINT AND DEMAND FOR JURY TRIAL

to one thousand five hundred dollars ($1,500.00), for each and every violation pursuant to 47 U.S.C. § 227(b)(3).

## COUNT II

### (Violations of the TDCA, Tex. Fin. Code Ann. § 392 *et seq.*)

53. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

54. Defendant violated the TDCA. Defendant's violations include, but are not limited to, the following:

    a. Defendant violated Tex. Fin. Code Ann. § 392.302(4) by causing a telephone to ring repeatedly or continuously, or making repeated or continuous telephone calls, with the intent to harass a person at the called number.

55. Defendant's acts, as described above, were done knowingly and willfully.

56. As a result of the foregoing violations of the TCDA, Defendant is liable to Plaintiff for declaratory judgment that Defendant's conduct violated the TCDA, actual damages, statutory damages, and attorney's fees and costs.

## COUNT III

### (Intrusion Upon Seclusion)

57. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

58. Restatement of the Law, Second, Torts, § 652(b) defines intrusion upon seclusion as, "One who intentionally intrudes … upon the solitude or seclusion of another, or his private affairs or concerns, is subject to liability to the other for invasion of privacy, if the intrusion would be highly offensive to a reasonable person."

59. Defendant violated Plaintiff's privacy. Defendant's violations include, but are not limited to, the following:

   a. Defendant intentionally intruded, physically or otherwise, upon Plaintiff's solitude and seclusion by engaging in harassing phone calls in an attempt to collect on an alleged debt despite numerous requests for the calls to cease.

   b. The number and frequency of the telephone calls to Plaintiff by Defendant after repeated requests for the calls to cease constitute an intrusion on Plaintiff's privacy and solitude.

   c. Defendant's conduct would be highly offensive to a reasonable person as Plaintiff received calls that often-interrupted Plaintiff's daily work, family, and sleep schedule.

   d. Defendant's calls to Plaintiff were repeated with such persistence and frequency as to amount to a course of hounding Plaintiff and became a substantial burden to her existence.

   e. Defendant's acts, as described above, were done intentionally with the purpose of coercing Plaintiff to pay the alleged debt.

60. As a result of Defendant's violations of Plaintiff's privacy, Defendant is liable to Plaintiff for actual damages.

## COUNT IV

### (Tex. Civ. Prac. & Rem. Code § 41.001 *et seq.*)

61. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

62. Tex. Civ. Prac. & Rem. Code § 41.001 allows a Plaintiff to recover exemplary damages where the "claimant proves by clear and convincing evidence that the harm with respect to which the claimant seeks recovery of exemplary damages results from: (1) fraud; (2) malice; or (3) gross negligence."

63. Tex. Civ. Prac. & Rem. Code § 41.001(2) defines "clear and convincing" as the "measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established."

64. Tex. Civ. Prac. & Rem. Code § 41.001(7) defines "malice" as "a specific intent by the defendant to cause substantial injury or harm to the claimant."

65. Tex. Civ. Prac. & Rem. Code § 41.001(11) defines "gross negligence" as "an act or omission: (A) which when viewed objectively from the standpoint of the actor at the time of its occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and (B) of which the actor has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others."

66. Plaintiff is informed and believes that the aforesaid conduct was malicious and grossly negligent, as those terms are defined by Tex. Civ. Prac. & Rem. Code § 41.001(1)-(11), as Defendant's conduct was done in complete conscious disregard of Plaintiff's rights and safety after Plaintiff clearly and repeatedly requested Defendant to cease its illegal conduct.

67. Defendant was aware that Plaintiff had requested to not be called anymore, that plaintiff was suffering from a medical ailment, and that Plaintiff did not have money to make a payment, and yet Defendant continued its bombardment of harassing phone calls to Plaintiff in violation of the TCPA, TCDA, and Plaintiff's privacy rights.

68. As a result of Defendant's conduct and violations, Defendant is liable to Plaintiff for punitive damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Maria Garcia respectfully requests judgment be entered against Defendant, Discover Bank, for the following:

    A.  Declaratory judgment that Defendant violated the TCPA and TDCA;

    B.  Actual damages pursuant to Ten. Fin. Code Ann. § 392.403(a)(2);

    C.  Cost and reasonable attorneys' fees pursuant to Ten. Fin. Code Ann. § 392.403(b);

    D.  Statutory damages pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C);

    E.  Actual and punitive damages for intruding upon Plaintiff's seclusion;

F.  Awarding Plaintiff any pre-judgment and post-judgment interest as may

be allowed under the law; and

G.  Any other relief that this Honorable Court deems appropriate.

## **DEMAND FOR JURY TRIAL**

Please take notice that Plaintiff demands a trial by jury in this action.

RESPECTFULLY SUBMITTED,


Dated: June 25, 2019

By: */s/Stuart M. Price*
Stuart M. Price, Esq.
**PRICE LAW GROUP, APC**
6345 Balboa Blvd, Suite 247
Encino, CA 91316
T: (818) 907-2030
F: (818) 205-2730
E: stuart@pricelawgroup.com
*Attorneys for Plaintiff,*
*Maria Garcia*